UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARIA MARIN,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CV 11-09331 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed and are summarized in the Joint Stipulation. [JS 2]. In a written hearing decision that constitutes the Commissioner's final decision, an administrative law judge (the "ALJ") found that plaintiff, who was then 51 years old, retained the residual functional capacity ("RFC") to perform her past work as a home health attendant and an industrial cleaner. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. [See Administrative Record ("AR") 27-31].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**RFC assessment**

Plaintiff contends that the ALJ erred in assessing plaintiff's RFC. More specifically, plaintiff argues that the ALJ erred in finding that plaintiff's diabetes and depression were not severe, and that the ALJ did not properly evaluate the medical evidence regarding her spinal impairment. [JS 4-15].

**Severity determination**

At step two of the sequential evaluation procedure, a claimant has the burden to present evidence of medical signs, symptoms and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004–1005 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996). A medically determinable mental impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; see 20 C.F.R. §§

404.1520a(b)(1), 416.920a(b)(1). Symptoms are the claimant's description of his or her impairment, while psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality. See 20 C.F.R. §§ 404.1520a(b), 404.1528(b), 416.920a(b), 416.928(b); see also Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1-*2.

If a claimant demonstrates the existence of a medically-determinable impairment, the ALJ must determine whether the impairment significantly limits the claimant's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ must consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2. If the claimant produces such evidence, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

Plaintiff alleged that she became disabled on April 1, 2009 due to back problems, diabetes mellitus, and depression.[1] [AR 27, 62, 69, 79-80, 166]. The ALJ reasoned that plaintiff's diabetes was not severe because plaintiff alleged that she gets dizzy when her blood sugar level rises, but testified that she did not check her blood sugar levels because she did not feel there was any reason to do so. [AR 28, 69-70]. The

---

[1] Plaintiff contends that she also alleged that she was disabled by anemia, but her disability applications and reports do not allege anemia as a basis for disability. [See JS 2 (citing AR 128-129, 133-136, 156, 166)]. For the reasons explained below, the ALJ did not err in finding that anemia was not a severe or disabling impairment.

1  ALJ also found that although the medical record contains diagnoses of Type II diabetes, there is no
2  indication of end organ damage, and the diabetes appears to be controlled. [AR 28 (citing AR 287-300)].

3       The ALJ did not err in finding that plaintiff's diabetes and depression were not severe. Plaintiff has
4  diagnoses of Type II diabetes mellitus. [See, e.g., AR 190, 212, 284, 287, 297]. Standing alone, however,
5  a diagnosis does not establish that an impairment is severe. Sample v. Schweiker, 694 F.2d 639, 642-643
6  (9th Cir. 1982). Plaintiff's blood sugar level was elevated. [See, e.g.. AR 209, 219, 318]. She was
7  prescribed medication (metformin or glipizide). [See. e.g., AR 225, 228, 231, 323, 325]. However, the ALJ
8  correctly noted that plaintiff's medical records do not reflect end organ damage. [See. e.g.. AR 213, 228
9  (diagnoses of uncomplicated, uncontrolled Type II diabetes); AR 241 (diagnosis of uncomplicated,
10 controlled diabetes, with no retinopathy); see generally AR 207-241, 287-300]. Plaintiff's own testimony
11 and her treatment reports indicate that she had a history of noncompliance with diabetes treatment. [See AR
12 27, 69-70, 217, 229]. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (explaining that an
13 "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of
14 treatment" can "cast doubt on the sincerity of" a claimant's subjective symptoms). The ALJ further noted
15 that a treating physician, Dr. Kim, noted in several reports that plaintiff had a "functional status" of "[n]o
16 physical disability." [See AR 29, 208, 217, 226, 274, 277, 283]. Substantial evidence supports the ALJ's
17 finding that plaintiff's diabetes mellitus was not severe.

18      The ALJ found that plaintiff did not have a severe mental impairment because plaintiff's symptoms
19 of depression and her treatment by a licensed clinical social worker ("LCSW") were insufficient to establish
20 a medically determinable impairment. In July 2009 plaintiff told Dr. Kim that she had been feeling sad for
21 a few weeks. Dr. Kim noted that plaintiff reported "feelings of hopelessness, depressed, or feeling down,"
22 and a "loss of interest in activities," also known as anhedonia. [AR 277]. Dr. Kim wrote that she had
23 screened plaintiff for depression, and she prescribed a 3-month supply of the anti-depressant Zoloft. [AR
24 278-279]

25      The following month, plaintiff reported that her depressive symptoms had not been relieved by
26 medication. [AR 274]. Dr. Kim assessed "depression/depressive disorder other" and referred plaintiff to
27 the county mental health clinic. [AR 275-276].

28      In February 2010, an LCSW with a community mental health clinic wrote a letter to the Social

1  Security Administration stating that plaintiff had been receiving treatment there since November 2009 due
2  to "depressive symptoms." [AR 257]. Clinic notes indicate that plaintiff participated in a "support group"
3  led by the LCSW from January 2010 through March 2010 to address feelings of depression and
4  hopelessness arising from her eviction and her sister's cancer. [AR 258].  Plaintiff terminated treatment
5  when she relocated to Bakersfield. [AR 252].

6      During the hearing, plaintiff testified that she was still taking Zoloft that she obtained from the
7  "General Hospital." [AR 72].  The ALJ noted that the medical record did not corroborate plaintiff's
8  testimony of continuing mental health treatment.  [AR 28].

9      In the absence of clinical data such as mental status examination findings or psychological test
10 results, the ALJ permissibly inferred that plaintiff had been diagnosed with depression based solely on her
11 self-reported symptoms, which alone cannot establish the existence of a medically determinable impairment.
12 .See 20 C.F.R. §§ 404.1528(a)&(b), 416.928(a)&(b) ("Symptoms are your own description of your physical
13 or mental impairment. Your statements alone are not enough to establish that there is a physical or mental
14 impairment. . . . Signs are anatomical, physiological, or psychological abnormalities which can be observed,
15 apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic
16 techniques."); Ukolov, 420 F.3d at 1005-1006 (affirming the ALJ's finding of no severe impairment where
17 the medical records documented only subjective symptoms or clinical observations that were "susceptible
18 to . . . manipulation" by the claimant, and did not contain a definitive diagnosis or finding of impairment).

19     In addition, the ALJ did not err in disregarding the treatment notes from an LCSW for purposes of
20 the severity determination.  Evidence from an "acceptable medical source" is required to establish the
21 existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for
22 a finding of severity or disability. See 20 C.F.R. §§ 404.1508, 404.1513(a), 416.908, 416.913(a).  Unlike
23 a licensed physician or psychologist, an LCSW is not an "acceptable medical source" whose findings can
24 establish the existence of a medically determinable impairment. An LCSW falls into the category of "other
25 sources."  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ "may also use" information in the record
26 from "other sources" "to show the severity" (but not the existence) of a claimant's medically determinable
27 impairments and how those impairments affect the ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).
28     Plaintiff contends that the ALJ erroneously disregarded progress notes from the Clinica Msr. Oscar

Romero ("Clinica Romero"). [JS 6-7]. That contention is inaccurate. The ALJ considered and cited Exhibit 10F [AR 286-300], which contains plaintiff's Clinica Romero notes from September 2009 through April 2010, and the ALJ also referred to plaintiff's mental health counseling with an LCSW at Clinica Romero beginning in late 2009. [See AR 28-29, 251-261].

The ALJ did not discuss a September 2008 progress note from Dr. Velazquez of the Clinica Romero that listed diagnoses of low back pain and diabetes with peripheral neuropathy. [AR 190]. However, plaintiff does not even allege that those conditions were disabling at that point. Her alleged onset date is not until April 2, 2009. Dr. Velazquez prescribed Tylenol with acetaminophen for back pain–a condition the ALJ found to be severe—but it does not appear that any treatment was prescribed for peripheral neuropathy, nor did Dr. Velazquez note any functional limitations. [AR 190]. The ALJ "need not discuss all evidence presented to her. Rather, she must explain why significant probative evidence has been rejected. Here, the evidence which the [ALJ] ignored was neither significant nor probative." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984).

The ALJ did not commit legal error in assessing the severity of plaintiff's impairments, and substantial evidence supports his severity determination.

**RFC for medium work**

Contrary to plaintiff's contention, the ALJ's finding that plaintiff retained the RFC to perform medium work is supported by substantial evidence and is free of legal error.

As the ALJ noted, much of the medical evidence predated plaintiff's alleged onset date, by several years in some instances, and many of those records were for problems other than back pain, depression, or diabetes. [AR 28, 183-204, 249-272, 301-358]. The only contemporaneous diagnostic study of plaintiff's back in the record before the ALJ was a December 2009 lumbosacral spine x-ray. That film showed disc space narrowing at L5-S1 and a calcification over the lower pole of the left kidney, but was otherwise unremarkable. [AR 29, 300]. A lumbosacral spine x-ray submitted to the Appeal Council showed unremarkable vertebral spaces and curvature, with minimal changes suggestive of "osteitis condensans ilii"[2]

---

[2] Osteitis condensans ilii means a "symmetric benign osteosclerosis" (bone hardening) of the portion of the iliac bones adjacent to the sacroliliac joints. Stedman's Medical Dictionary osteitis, osteosclerosis (27th ed. 2000).

and the same small calcification, described as a possible kidney stone. [AR 380]. The ALJ remarked that Dr. Kim frequently noted a "functional status" of "no physical disability"[AR 29, 277, 280, 283], and that plaintiff's treatment reports document normal musculoskeletal findings. [AR 29, 284, 275]. That evidence supported the ALJ's conclusion that plaintiff exhibited "minimal pathology" and "minimal objective abnormality on exam." [AR 29].

The ALJ remarked that plaintiff reported using non-narcotic medication to relieve her back pain, such as ibuprofen and naproxen [AR 29, 15], and that her reported use of stronger medication on occasion was not linked to any clinical pathology or even to a sustained exacerbation of subjective symptoms. [AR 15, 29]. The ALJ also observed that plaintiff used a cane during the administrative hearing. [AR 29]. She testified that "they gave it to me in the General Hospital," and that she felt "more secure, more sure with it." [AR 72]. The ALJ noted that plaintiff's treatment reports did not confirm the existence of any trauma requiring use of a cane or any current prescription for one, and she justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC. [AR 29]. See SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."); Verduzco, 188 F.3d at 1088 (holding that the ALJ reasonably found the claimant's testimony to be "unbelievable in general" where the claimant, among other things, used a cane at the hearing, and "none of [his] doctors had ever indicated that he used or needed to use an assistive device in order to walk").

The ALJ's RFC finding was supported by the opinion of Dr. Beig, a nonexamining state agency physician who reviewed treatment records dated May 2008 through May 2009 from Queens Care Family Clinic, as well as May 2009 records from Kaiser Permanente. [AR 242-248]. Plaintiff argues that Dr. Beig's opinion that plaintiff could perform medium work was based on an incomplete record because he had not seen a disability report in which plaintiff reported visits in July 2009 to the USC Medical Center Emergency Department and to another clinic for low back pain where she had been prescribed Vicodin, acetaminophen, and a muscle relaxant. [JS 5-6 (citing AR 165-169) (plaintiff's disability report)].

That argument lacks merit. Even if plaintiff had an exacerbation in low back symptoms in July

7

2009, Dr. Beig's report is uncontroverted and is consistent with the objective medical evidence as a whole. Treating physician Dr. Kim indicated that plaintiff had no significant musculoskeletal impairments. Dr. Beig acknowledged that plaintiff had some back pain, but concluded that the objective findings did not support a more restrictive RFC. That opinion is substantial evidence supporting the ALJ's decision. See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non- examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

**Additional evidence submitted to the Appeals Council**

Plaintiff argues that additional evidence she submitted to the Appeals Council in support of her unsuccessful request for review was "new and material" and warranted a remand. [JS 29-34].

The additional evidence consisted of records from USC Medical Center for the period April 10, 2009 through November 16, 2010. [AR 359-385]. Those records show that on April 10, 2009, plaintiff presented to the emergency department complaining of a one-week history of low back pain. [AR 372]. Plaintiff had a positive straight leg raising test on the right.[3] Muscle strength in the right lower extremity was slightly diminished (4 on a scale of 0 through 5, with 5 being normal). Plaintiff had decreased sensation in the right thigh. [AR 374]. Plaintiff refused a recommended lumbar spine MRI because she was afraid of the procedure, despite being offered medication to "allow her to tolerate it." [AR 375]. The diagnosis was "back pain, partially evaluated." [AR 375].

In November 2010, plaintiff was evaluated for anemia. [AR 364-370]. Her diagnoses were anemia, probably secondary to a history of menorrhagia (excessive menses); a history of fibroids; and diabetes mellitus. [AR 368]. She was prescribed Tylenol and discharged in stable condition. [AR 369-370]. A physician's assistant referred plaintiff to see a social worker because plaintiff was homeless. [AR 359-364].The social worker noted that plaintiff "is not homeless," but rather lived with her daughter in Bakersfield or with her two sons in Los Angeles. [AR 362]. Plaintiff was assessed as able to perform activities of daily living without assistance. [AR 360]. On mental status examination, plaintiff was noted

---

[3] A positive straight leg raising test is indicative of pain produced in the sciatic nerve distribution of the opposite leg. Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2004).

to be sad and tearful with a depressed mood due to financial problems and the deaths of a friend and her sister. Plaintiff had a bottle of Zoloft with her containing what remained of a 90-day supply prescribed in July 2010. The bottle was more than half full. Plaintiff told the social worker that she did not take Zoloft daily as prescribed because "I only take it when I feel depressed," and it made her sleepy. [AR 362]. Plaintiff was educated about available resources, including social security. [AR 361-363].

A party seeking a remand for consideration of additional evidence under 42 U.S.C. § 405(g) must demonstrate that (1) the evidence is material, and (2) there was good cause for the failure to incorporate the evidence into the record during the prior proceeding. 42 U.S.C. § 405(g); Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001); Mayes v. Massanari, 262 F.3d 963, 970 (9th Cir. 2001). However, the "new and material evidence" standard in section 405(g) "applies only to new evidence that is not part of the administrative record and is presented in the first instance to the district court." Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012) ."New and material evidence" that is "submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court." Brewes, 682 F.3d at 1164; see Tackett v. Apfel, 180 F.3d1094, 1097-1098 (9th Cir. 1999); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).

The additional evidence from USC Medical Center was submitted to, and considered by, the Appeals Council, and therefore it is part of the administrative record for purposes of "determin[ing] whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Brewes, 682 F.3d at 1163. The additional evidence from April 2009 related to the period before the ALJ's September 22, 2010 decision, and therefore that evidence is material to the ALJ's decision. See Brewes, 682 F.3d at 1162 ("The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision.") (citing 20 C.F.R. § 404.970(b)). The April 2009 evidence, which contained a diagnosis of back pain with minimal abnormal findings, was consistent with the evidence before the ALJ. Accordingly, it does not alter the conclusion that the ALJ's decision was supported by substantial evidence in the record as a whole.

The additional evidence from November 2010 post-dated the ALJ's decision. Nothing in that evidence suggests that it was, or was intended to be, a retrospective assessment of plaintiff's condition prior

to the date of the ALJ's decision. There also is no reason to conclude that those reports would have changed the ALJ's decision even if they had been before her. Plaintiff's diagnosis of anemia was insufficient to establish the existence of a severe, medically determinable impairment. The social worker's assessment that plaintiff was depressed due to situational factors was not evidence from an acceptable medical source and did not indicate that plaintiff's condition more than minimally affected her ability to work, particularly in view of plaintiff's statement indicating that she only sporadically felt depressed. Therefore, that evidence does not provide a basis for reversing the ALJ's decision. Cf. Warner v. Astrue, 859 F.Supp.2d 1107, 1117 (C.D. Cal. 2012) (remanding where "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis").

**ALJ's failure to order a consultative psychiatric examination**

Plaintiff argues that the ALJ abused her discretion in denying plaintiff's counsel's request for a consultative psychiatric examination.

In general, the Commissioner "has broad latitude in ordering a consultative examination. The government is not required to bear the expense of an examination for every claimant." Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted). A consultative examination may be purchased when the evidence as a whole is not sufficient to support a disability determination. 20 C.F.R. §§ 404.1519a, 416.919a; Reed, 270 F.3d at 842. Cases that "normally require a consultative examination" include those in which evidence not contained in the claimant's medical records is needed, and those in which a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and resolution cannot be achieved by recontacting the claimant's medical source. Reed, 270 F.3d at 842 (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b)); see also Mayes, 276 F.3d at 459-460 (stating that the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," and rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

The ALJ did not abuse her discretion in refusing to order a consultative psychiatric examination because the evidence before her, and in the record as a whole, is sufficient to support her finding that plaintiff did not have a severe mental impairment. The evidence before the ALJ was not materially

inconsistent or ambiguous, and the additional evidence plaintiff submitted to the Appeals Council does not alter the conclusion that a consultative examination was not required.

**Credibility finding**

Plaintiff argues that the ALJ did not properly weigh plaintiff's testimony or make proper credibility findings. [JS 21-27].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to evaluate all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). For the reasons described above, the ALJ permissibly found that plaintiff had a severe, medically determinable lumbar spine impairment, but that she did not have any other medically determinable physical or mental impairment. Therefore, the ALJ was not required to consider, or give reasons for rejecting, plaintiff's subjective complaints about her alleged impairments other than her back impairment.

Absent affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff's credibility argument is largely cumulative of her argument that the ALJ erred in assessing her RFC. As explained above, the ALJ properly discredited plaintiff's complaints of back pain in view of plaintiff's reliance primarily on non-narcotic, over-the-counter pain medication. See Parra v. Astrue, 481

F.3d 742, 750-751 (9th Cir. 2007) (holding that "evidence of 'conservative treatment," such as use of over-the-counter pain medication, "is sufficient to discount a claimant's testimony regarding severity of an impairment") (citing <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ validly concluded that "conservative treatment" suggested "a lower level of both pain and functional limitation" than the claimant alleged)). The absence of objective medical evidence corroborating plaintiff's subjective allegations was another factor that the ALJ was allowed to consider. See <u>Burch</u>, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in h[er] credibility analysis."). Plaintiff's testimony that she had been prescribed or given a cane by her doctors was inconsistent with the medical evidence, which did not document a prescription for a cane or an impairment suggesting that its use was medically necessary. See <u>Verduzco</u>,188 F.3d at 1088. The additional evidence submitted to the Appeals Council did not undermine the ALJ's credibility analysis. The reasons articulated by the ALJ for her credibility finding are specific, clear, and convincing.

**Vocational expert's testimony**

Plaintiff argues that the vocational expert's testimony was based on a hypothetical question that did not accurately reflect plaintiff's limitations, and therefore the vocational expert's testimony is not substantial evidence supporting the ALJ's decision. [JS 27-29].

The vocational expert testified that plaintiff had past relevant work as home health aide and as an industrial cleaner. [AR 76]. He classified both of those jobs as medium, unskilled work. In response to a hypothetical question by the ALJ, the vocational expert testified that a hypothetical person with plaintiff's vocational profile who could perform medium work and only occasionally climb ladders and stoop could perform plaintiff's past work. [AR 76-77].

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." <u>Tackett</u>, 180 F.3d at 1101. Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. <u>Robbins</u>, 466 F.3d at 886; <u>Tackett</u>, 180 F.3d at 1101. The ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." <u>Greger v. Barnhart</u>, 464 F.3d 968, 973 (9th Cir.

2006)(quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)).

The limitations in the ALJ's hypothetical question, which were incorporated into her RFC finding, accurately describe plaintiff's limitations that are supported by substantial evidence in the record. The vocational expert's testimony in response to that question is substantial evidence supporting the ALJ's finding that plaintiff can perform her past relevant work.

**Conclusion**

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

October 31, 2012

_____
ANDREW J. WISTRICH
United States Magistrate Judge